NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 14 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAMES HUGHES; DENA HUGHES,

      Plaintiffs - Appellants,

  v.

AMERICAN STRATEGIC INSURANCE
CORP., a foreign corporation; ASI
UNDERWRITERS CORP., a foreign
corporation,

      Defendants - Appellees.

No. 25-1521

D.C. No.
3:24-cv-05114-DGE

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
David G. Estudillo, District Judge, Presiding

Argued and Submitted March 11, 2026
Portland, Oregon

Before: COLLINS and LEE, Circuit Judges, and FITZWATER, District Judge.[**]

James and Dena Hughes (the "Hughes") appeal the district court's summary

judgment for American Strategic Insurance Corp., and ASI Underwriters Corp.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

(collectively "ASI"). This suit arose after ASI did not renew an insurance policy on the Hughes' home for nonpayment—and the home was later damaged by fire. The Hughes present five primary arguments on appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for proceedings consistent with this memorandum disposition.

We review the district court's grant of summary judgment de novo. *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021). We review evidentiary rulings for abuse of discretion. *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014).

1. <u>Notice and consent.</u> We affirm the district court's determination that ASI did not need to send separate renewal notices to and obtain consent for electronic delivery from both Mr. and Mrs. Hughes. The Hughes argue that because Washington law requires that notice be given "to the named insured" (Wash. Rev. Code § 48.18.2901) and the policy lists "JAMES L HUGHES AND DENA M HUGHES" as the named insureds, ASI needed separate notices to and consent from them individually.

This argument fails. Washington law allows one spouse to impliedly consent to a transaction conducted by the other spouse. *See Nichols Hills Bank v. McCool*, 701 P.2d 1114, 1116–17 (Wash. 1985). The overall record concerning the relevant insurance transactions confirms that Mr. Hughes had authority to act for both

spouses in those transactions, and the Hughes point to nothing that would support a contrary inference that Dena Hughes did not impliedly authorize her husband to conduct the insurance transactions on behalf of both. There is thus no reasonable dispute that Mr. Hughes was able to obtain insurance coverage from ASI for the home on behalf of himself and his wife—without his wife's personal involvement. When Mr. Hughes obtained the policy, he consented to electronic service at the email address he provided. And once consent is given, Washington law establishes that email communication is "equivalent to" delivery by postal mail. Wash. Rev. Code § 48.185.005(3). Delivery to the indicated email address was thus sufficient notice to both spouses. *See id.*

2. Renewal notice requirement. We also agree with the district court that the renewal notice complied with Washington law, even though the notice misidentified Columbia Credit Union as the payor for the insurance premium. Washington law requires that before a policy expires "the insurer [must] communicate[], . . . its willingness to renew in writing to the named insured and [] include[] in that writing a statement of the amount of the premium or portion thereof required to be paid by the insured to renew the policy." Wash. Rev. Code § 48.18.2901(1)(b). While the July 15, 2022 email in question identified Columbia Credit Union as the payor, the notice was addressed to the Hughes and instructed them to "please pay the minimum amount due shown below." This notice was statutorily sufficient. *See* Wash. Rev.

3                                                                                                        25-1521

Code § 48.18.2901(1)(b). The notice also advised the Hughes to "check with" their "mortgage company" to verify payment. The Hughes did not take these steps.

3. O'Nuallain declaration. Further, the district court did not err in concluding that the declaration of ASI's employee, Ms. Kellie O'Nuallain, sufficed to establish that the information contained in that declaration and its attachments could "be presented in a form that would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(2). The Hughes argue that because Ms. O'Nuallain's declaration stated that she made the declaration "upon personal knowledge *and belief*," she lacked the "personal knowledge" required Federal Rule of Evidence 602 and Federal Rule of Civil Procedure 56(c)(4). The district court did not abuse its discretion in concluding that Ms. O'Nuallain had the knowledge and qualifications to authenticate ASI's business records and to explain, based on her knowledge of ASI's procedures and policies, what those records indicated.

4. Insurance registration via computer. The district court also did not err in determining that there is no genuine dispute of material fact that Mr. Hughes completed the insurance registration via computer. "A genuine dispute of material fact exists only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Mr. Hughes avers, in conclusory fashion, that he completed his

insurance application "entirely" over the phone. ASI business records, however, indicate the enrollment was initiated by phone and completed by computer. Absent non-conclusory evidence setting forth specific facts to substantiate Mr. Hughes's conclusory assertion and addressing these business records, there is no genuine dispute of material fact that Mr. Hughes completed the insurance registration on the computer. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

5. <u>Electronic clickwrap consent.</u> The district court did not err in determining that the clickwrap consent agreement was legally sufficient. As part of the registration process, Mr. Hughes was required to click a box consenting to conduct the transaction "electronically pursuant to the [linked] terms & conditions." The hyperlink to the "terms and conditions" was prominently marked with distinctively blue bolded text. The Hughes argue that these clickwrap terms are insufficient because they were not conspicuous, the terms and conditions failed to specify which policy documents would be sent electronically, and the terms and conditions did not specify the hardware and software requirements for accessing electronic policy communications. These arguments are also unavailing.

Washington law requires that the consenting party be "provided with a clear and conspicuous statement" of the terms. Wash. Rev. Code § 48.185.005(4)(b).

Washington's caselaw on clickwrap enforceability is sparse. *See McKee v. AT&T Corp.*, 191 P.3d 845, 860 (Wash. 2008) (one of few instances of Washington courts considering 'clickwrap' agreements). We therefore interpret the statute "according [to] its ordinary meaning" and find the conditions here sufficient. *State v. Kintz*, 238 P.3d 470, 475 (Wash. 2010). Ninth Circuit caselaw on clickwrap is developed and similarly requires that terms be "reasonably conspicuous" and that "the consumer take[] some action, such as clicking a button or checking a box." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Both of those conditions were met by the hyperlinked terms and conditions and the mandatory text box here. Absent contrary state law, we find this caselaw persuasive. *Id.*

Further, Washington law requires that the consenting party receive notice of "[t]he types of notices and documents to which the party's consent would apply." Wash. Rev. Code § 48.185.005(4)(b)(ii). Here, the hyperlinked terms and conditions specified that "insurance policy documents" would be received electronically. While broad, this language encompasses the documents at issue in this case.

Washington law also requires that the consenting party be "provided with a statement of the hardware and software requirements" to access and retain documents sent electronically. Wash. Rev. Code § 48.185.005(4)(c)(i). The terms and conditions required acknowledgement that Mr. Hughes "must have a computer and access to e-mail" for electronic communication. This understandable language

indicates what hardware—a computer—and what software—access to e-mail—would be required for electronic policy communications. This satisfies the statute's plain meaning. *See Kintz*, 238 P.3d at 475.

6. <u>WCPA claim.</u> The district court, however, did not sufficiently analyze the Hughes' claims under the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010 *et seq*. The statute is to "be liberally construed" by courts so "that its beneficial purposes may be served." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) (quoting Wash. Rev. Code § 19.86.920). In particular, ASI's agent, Progressive, sent an email on September 23, 2022 with an attachment that included a page notifying the Hughes that their policy had lapsed due to non-payment on September 14. But the cover email did not mention the lapse of the policy and instead included seemingly standard boilerplate language that is verbatim identical to what was included in Progressive's earlier July 15, 2022 email concerning the policy's upcoming renewal ("Subject: Important info attached: Please check over policy documents"; "We attached your current policy documents that's where you'll find all your important policy details, like your coverages, bill plan, and agent information. If your policy is renewing, you'll need to make a payment. If your mortgage company pays your premium, they received this notice as well. Please check with them to learn when the payment will be made on your behalf. Otherwise, check the first few pages of the attached document to make sure

25-1521

you're on track with your payments and other items.").

On the one hand, the cover email's text is potentially misleading under the WCPA because—like the July 15 email text it replicates—it suggests that the Hughes are still covered under the policy and no lapse has yet occurred. On the other hand, the email directs the Hughes to review the attachment (page 5 of which would have notified them of the termination). And whether that email text was the proximate cause of any subsequent harm from the policy lapse should also be considered. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21–23 (Wash. 2007). Further assessment of the WCPA claim is warranted. Accordingly, we remand the WCPA claim to the district court.

**AFFIRMED IN PART AND REVERSED IN PART; REMANDED.**